.THE STATE OF KANSAS V. RANSOM PIGG.

No. 15,910.

SYLLABUS BY THE COURT.

1. PRELIMINARY EXAMINATION—₋Purposes—Effect of Waiver on Introduction of Evidence. The purpose of a preliminary examination is threefold: (1) To inquire concerning the commission of crime and the connection of the accused with it, in order that he may be informed of the nature and character of the crime charged against him, and, if there be probable cause for believing him guilty, that the state may take the necessary steps to bring him to trial; (2) to perpetuate testimony; (3) to determine the amount of bail which will probably secure the attendance of the accused to answer the charge. The right of the state to introduce evidence at a preliminary examination can not be defeated by the accused waiving an examination.

2. ———— Court of Topeka—Jurisdiction. The act creating the court of Topeka (Laws 1899, ch. 129) confers upon the judge of that court the power and jurisdiction of a justice of the peace in preliminary examinations of persons accused of felony.

3. ———— Transcript — Subsequent Attestation. Where the clerk of a city court has failed to sign the certificate attached to the transcript of a preliminary examination held before the judge of such court it is proper for the district court to permit the certificate to be amended by having the clerk attach his signature.

4. LARCENY—Identification of Property. In a prosecution for larceny, where the money described in the information and claimed to have been stolen is introduced in evidence and exhibited to the jury, it is not necessary that the particular bills should be identified as the ones described in the information.

5. ———— Judicial Notice of Value of Money. Courts take judicial cognizance of the value of money. In a prosecution for the larceny of certain United States treasury notes and national bank notes, where the particular bills which it is claimed were stolen are offered in evidence, proof of their value is unnecessary.

6. ———— Title of Stolen Property May be Laid in Possessor. The actual status of the legal title to stolen property is no

31—80 KAN.

concern of the thief. In an information charging larceny the title to the property may be laid either in the owner or the person in whose possession it was when it was taken, even though that person had stolen it from some one else.

Appeal from Shawnee district court; ALSTON W. DANA, judge. Opinion filed July 3, 1909. Affirmed.

*Fred S. Jackson,* attorney-general, and *J. J. Schenck,* county attorney, for The State.

*D. C. Tillotson,* for the appellant.

The opinion of the court was delivered by

PORTER, J.: Ransom Pigg, the appellant, was arrested and brought before E. R. Simon, judge of the court of Topeka, on a warrant charging him with grand larceny in stealing a sum of money. He offered to waive a preliminary examination. The complaining witness, John McIntosh, is a cousin of the appellant, and resided at that time in Missouri. The county attorney asked to have McIntosh examined and a recognizance taken for his appearance as a witness at the trial. Over the objection of the appellant this was done, and from the evidence it appeared that there was probable reason for believing the appellant guilty of larceny from the person. He was accordingly bound over to the district court to answer that charge. Afterward an information was filed in the district court charging him with larceny from the person. He was tried, convicted, and judgment was rendered upon the conviction. He was refused a new trial, and appeals.

The principal claim here is that the court erred in overruling his plea in abatement. In this plea he alleged that he had never been given a preliminary examination for the offense charged in the information, had never waived the same, and was not a fugitive from justice. The law is well established that a new offense can not be added after the defendant has waived an examination. (*The State v. Spaulding,* 24 Kan. 1;

*The State v. Jarrett,* 46 Kan. 754.) This declaration of law has usually been made in cases where the defendant had waived his right to a preliminary examination and no testimony was in fact taken. It is equally well settled that if it appear on the examination that the defendant is guilty of a public offense other than that charged in the warrant he may be bound over for that offense. In the syllabus in *Redmond v. The State,* 12 Kan. 172, it was said:

"In such a case, in justice to the defendant a new complaint ought to be filed, but the statute does not in terms require it." (Syllabus.)

In *The State v. Fields,* 70 Kan. 391, it was said:

"The language of the statute permitting a prosecution for a felony other than that charged in the warrant apparently limits the right to cases in which it appears upon a hearing that the defendant is guilty of such other offense." (Page 395.)

Assuming that the offense of larceny from the person—for which the defendant was tried and convicted—is a distinct and separate offense from larceny, the appellant having waived a preliminary examination only for the offense charged in the warrant the county attorney was not authorized to file an information against him charging him with larceny from the person unless in virtue of the fact that testimony was taken at the examination tending to show him to be guilty of that offense.

Obviously, we have a different question presented from that decided in the cases cited. It is the contention of appellant that when he offered to waive examination there was nothing for the magistrate to do but to bind him over to answer the particular charge; in other words, without the filing of a new complaint charging a different offense the examining magistrate was without jurisdiction to hear any evidence. This contention can not be sustained. We are aware of no law forbidding the practice, and certainly there is no

good reason why a prosecuting attorney may not introduce evidence before the examining magistrate notwithstanding the accused has waived a preliminary examination. At the time the waiver is made the prosecutor may not have knowledge of facts that would authorize the filing of another complaint. It is apparent that the interests of justice will often require that some evidence be introduced by the state. The prosecutor may wish to make a preliminary investigation to learn the facts so that he may proceed intelligently in the subsequent prosecution of the case, or to preserve the testimony of a witness. It may become necessary, as in this case, to examine a witness in order to furnish a basis for requiring a recognizance for his appearance at the trial. Besides, the state has an interest and concern in the discharge of an accused person when there is no ground for believing him guilty. In *The State v. Goetz*, 65 Kan. 125, Mr. Justice Cunningham, speaking for the court, used this language:

"While one object of a preliminary examination is to inform the defendant of the nature and character of the crime charged against him, it is also a step and a necessary step in the proceeding that leads up to his trial in the district court." (Page 127.)

Indeed, the purpose of a preliminary examination may be said to be threefold: (1) To inquire concerning the commission of crime and the connection of the accused with it, in order that he may be informed of the nature and character of the crime charged against him, and, if there be probable cause for believing him guilty, that the state may take the necessary steps to bring him to trial; (2) to perpetuate testimony; (3) to determine the amount of bail which will probably secure the attendance of the accused to answer the charge.

In *State ex rel. Attorney-general v. Judge*, 104 La. 237, it was held that the right of the state to demand a

preliminary examination can not be defeated by the accused waiving an examination. The statute author-izing preliminary examinations which was construed in that case is much broader and more explicit in its provisions than ours. It is made the duty of the exam-ining magistrate to open proceedings of inquiry touch-ing the accusation, to examine under oath the witnesses, and to reduce their depositions to writing. The testi-mony thus taken, both that of the witnesses and of the accused, has been held under proper circumstances to be competent evidence before grand and petit juries. (*State v. Wiggins*, 50 La. Ann. 330.) The court, in *State ex rel. Attorney-general v. Judge, supra,* held that the principal object of a preliminary examination is, first, to inquire touching the commission of crime and the accused's connection with it, and, second, to perpetuate testimony. In the opinion it was said:

"The state has an interest in both. If a crime has been committed, the facts and circumstances connected therewith should be known to the prosecuting officers, to the end that proper steps for the vindication and enforcement of the law may be taken. If the particular person accused of the crime is shown by the examina-tion not to be the guilty one, his discharge is ordered. The state has as much concern and interest in the liber-ation of one falsely accused as it has in the apprehen-sion and detention of one who is rightfully accused. If from the examination the proof is evident or the pre-sumption great that the person accused is the guilty one, his committal is ordered. If the offense is one bail-able under the law, the amount of bail he is to give is determined. If not bailable, the accused is ordered confined. . . . Witnesses may die, or leave the state, or become disqualified to testify. Hence, the necessity to perpetuate their testimony in form for future use, and the best and most practical way to do this is through a preliminary examination." (Pages 239, 240.)

Since the evidence was properly admitted showing an offense other than that charged in the warrant, it became the duty of the magistrate to bind the appel-

lant over to answer to the other charge; and he can not be heard to say that he was not given a preliminary examination, because in such a case the law is that he must take notice of the nature and character of the offense charged against him from the evidence introduced at the examination as well as from the papers in the case. (*The State v. Bailey*, 32 Kan. 83; *The State v. Smith*, 57 Kan. 673; *The State v. Fields*, 70 Kan. 391; *The State v. Moon*, 71 Kan. 349.)

No express provision is found in our statute which authorizes a defendant to waive a preliminary examination. As a matter of fact, all that he does by waiving an examination is to say that so far as he is concerned the state need offer no evidence, thereby permitting an information to be filed without it. (Crim. Code, § 69.) He may waive the necessity but he can not waive the right of the state to offer evidence if it sees fit. We are at a loss to conceive how the appellant could have been prejudiced by the introduction of evidence. He was present and represented by counsel. The evidence fully advised him of the character of the offense with which he was charged. The warrant charged him with the larceny of certain money, and the evidence charged that he took the same money from the person of John McIntosh.

A further contention is that the court of Topeka is not an examining magistrate and that all proceedings before that court were void. The act creating the court of Topeka provides in part as follows:

"The court hereby established shall have the same jurisdiction, civil and criminal, as justices of the peace now have in this state; and for the purpose of the jurisdiction hereby conferred, and of its proper and necessary exercise, all the laws of this state relating to the powers, duties and jurisdiction of justices of the peace and practice, pleadings and proceedings in justice courts which are not in conflict with the provisions of this act shall apply to said court of Topeka and the judge thereof and to the mode of practice therein, and to the power thereof, original, mesne, and final, so

far as the same may be applicable." (Laws 1899, ch. 129, § 2.)

Section 8 of the act provides:

"And in all preliminary examinations held before said judge in cases of persons accused of the commission of a felony, it shall be the duty of said clerk to take down all the testimony in writing and file the same with the papers in the case."

The same act which creates the court abolishes the jurisdiction of justices of the peace to hold preliminary examinations, and if appellant's theory is correct there is no way in which such examinations can be held in the city of Topeka, or, in fact, in any city where there is a city court. In the statute the terms "court of Topeka" and "judge of the court of Topeka" are used interchangeably, but the intention of the legislature is not open to doubt. The law manifestly confers upon the court the same powers and jurisdiction that a justice of the peace exercises when sitting as a court, and upon the judge of the court the same powers and duties that a justice exercises when acting as a magistrate in preliminary examinations.

An objection is made to the sufficiency of the transcript from the city court, but the transcript, together with the evidence of the clerk, shows that it contained a true statement of the proceedings in the preliminary examination. The failure of the clerk to sign the certificate attached to the transcript was a mere oversight, and the district court properly permitted the certificate to be amended by having the clerk attach his signature. (*The State v. Geary*, 58 Kan. 502.) There is nothing substantial in the claim that the certificate shows that the preliminary examination was held before the clerk instead of before the judge.

On the trial the state offered in evidence the money which it is claimed had been stolen. It is contended that the evidence was improperly admitted for the reason that there was no attempt to have a witness de-

scribe each bill by giving its number, series and denomination. It appears that the identical money described in the information, and claimed to have been stolen, was introduced in evidence and exhibited to the jury. It was not necessary that a witness should take each bill and describe its distinguishing marks, or identify it as one described in the information. One of the issues of fact submitted to the jury was the question whether the money described in the information was stolen. Nor was it necessary to introduce evidence to show the value of the money, since the money itself was introduced in evidence and proved its own value. Courts will take judicial cognizance of the value of money. (*Grant v. The State,* 55 Ala. 201; *Ector v. The State,* 120 Ga. 543; *Collins et al. v. The People,* 39 Ill. 233.)

The information alleged that the money was the property of John McIntosh. He testified that the money belonged to his father, and that when he left home he just took it. This can not be held to constitute a variance, because the actual status of the legal title to stolen property is no concern of the thief. (25 Cyc. 89.) The possession of the property in the complaining witness was sufficient to make it the subject of larceny, and the title may be laid either in the owner or the person from whom it was taken. This is the law even where the person from whom it was taken had stolen it from some one else. "Thus, if A steal goods from B, and C afterward steal the same goods from A, C is a felon both as to A and B." (*Ward v. The People,* 3 Hill [N. Y.], 395, 398. See, also, *People v. Nelson,* 56 Cal. 77.)

We find no error in the record, and the judgment is affirmed.