NOTICE
This Order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2024 IL App (4th) 231295-U

NO. 4-23-1295

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
August 1, 2024
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* THE APPOINTMENT OF A SPECIAL PROSECUTOR, | ) ) ) | Appeal from the Circuit Court of Tazewell County |
| (Shelly I. Hranka, | ) | No. 22MX118 |
| Petitioner-Appellant, | ) | |
| v. | ) | |
| Kevin E. Johnson, in His Official Capacity as State's Attorney of the County of Tazewell, | ) ) | Honorable Carla E. Wheeler, |
| Respondent-Appellee). | ) | Judge Presiding. |

JUSTICE DOHERTY delivered the judgment of the court.
Justices Harris and Zenoff concurred in the judgment.

**ORDER**

¶ 1     *Held*: The trial court did not abuse its discretion in dismissing a petition for the appointment of a special prosecutor because petitioner failed to adequately allege that respondent had an actual conflict of interest.

¶ 2     This appeal arises from the trial court's dismissal of a petition that the responding party has fairly described as "a disorganized and chaotic stream of complaints related to Tazewell County government." Petitioner Shelly I. Hranka sought the appointment of her personal attorney, Donald K. Birner, as a special prosecutor for Tazewell County (County) so that he could pursue a litany of allegations of official misconduct by County Board Chairman David Zimmerman, claims that then County State's Attorney Stewart J. Umholtz had failed to pursue. The court dismissed the petition because petitioner failed to adequately allege an actual conflict of interest on the part

of current County State's Attorney Kevin E. Johnson or his office. Because the court did not abuse its discretion in dismissing the petition, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4         Petitioner served as the County auditor until 2020. In 2019, purportedly acting in her official capacity and on behalf of the County, petitioner brought a complaint against Zimmerman in his official and individual capacities, Umholtz in his official capacity, and former County Auditor Vicki Grashoff in her individual capacity. Petitioner's complaint was filed by Birner, who was acting as her attorney without the approval of the County Board or the state's attorney; the complaint alleged misconduct by Zimmerman involving reimbursements for commuter mileage, a contract for attorney fees in an earlier case, constructive fraud, and breach of fiduciary duties. Petitioner sought the recovery of funds to the County based on these allegations.

¶ 5         The Counties Code imposes a duty on state's attorneys to represent county officers in their official capacity whether they are plaintiffs or defendants, so Umholtz had a *prima facie* duty to represent both sides of petitioner's lawsuit. See 55 ILCS 5/3-9005(a)(3)-(4) (West 2018). However, under long-standing precedent governing such situations, "the state's attorney has authority to represent the side which he believes to be right" (*People ex rel. Courtney v. Ashton*, 358 Ill. 146, 152 (1934)), and Umholtz chose to represent respondents' side. Nevertheless, petitioner believed this situation constituted a *per se* conflict of interest, so she sought the appointment of Birner as a special prosecutor under subsection (a-10) of section 3-9008 of the Counties Code, which provides:

> "[A]n interested person in a cause, proceeding, or other matter arising under the State's Attorney's duties, civil or criminal, may file a petition alleging that the State's Attorney has an actual conflict of interest in the cause, proceeding, or other

matter. The court shall consider the petition, any documents filed in response, and if necessary, grant a hearing to determine whether the State's Attorney has an actual conflict of interest in the cause, proceeding, or other matter. If the court finds that the petitioner has proven by sufficient facts and evidence that the State's Attorney has an actual conflict of interest in a specific case, the court may appoint some competent attorney to prosecute or defend the cause, proceeding, or other matter." 55 ILCS 5/3-9008(a-10) (West 2018).

¶ 6　　　　The trial court declined to appoint a special prosecutor, concluding that Umholtz's refusal to represent petitioner in the lawsuit was a proper exercise of his discretion resulting from a mere difference of opinion, as opposed to an "actual conflict of interest" as required by subsection (a-10) (*id.*). The court then granted Zimmerman's motion to dismiss the complaint because petitioner lacked legal standing to sue on behalf of the County.

¶ 7　　　　Petitioner appealed. This court affirmed, agreeing with the trial court that petitioner lacked standing to sue on the County's behalf and holding that her request for a special prosecutor was moot because the request was limited to her official-capacity suit. *County of Tazewell ex rel. Hranka v. Zimmerman*, 2021 IL App (3d) 200315, ¶ 20.

¶ 8　　　　In May 2022, petitioner filed the petition at issue in the present case, seeking the appointment of Birner as a special prosecutor under subsection (a-10) to investigate and pursue the same allegations against Zimmerman, naming Umholtz as the respondent in his official capacity as the state's attorney. Petitioner was no longer the County auditor, so she filed the petition in her capacity as a private citizen; because the parties have failed to address the issue, we assume without deciding that petitioner qualified as "an interested person" eligible to file a petition under subsection (a-10) (*id.*).

¶ 9        Johnson took over the position of state's attorney from Umholtz on an interim basis in September 2022, and the citizens of the County elected Johnson to the position in November 2022. Although the caption in the trial court did not change, we note that the respondent is now Johnson in his official capacity as the County's state's attorney; we have changed the caption in this court accordingly. See 735 ILCS 5/2-1008(d) (West 2022) ("If any trustee or any public officer ceases to hold the trust or office and that fact is suggested of record, the action shall proceed in favor of or against his or her successor."). Also in November 2022, petitioner filed a supplement to her petition, adding further allegations of misconduct by Zimmerman.

¶ 10        In July 2023, the trial court dismissed the supplemented petition on the state's attorney's motion, concluding that petitioner had failed to adequately allege an actual conflict of interest. The court denied petitioner's motion to reconsider.

¶ 11        This appeal followed.

¶ 12                                    II. ANALYSIS

¶ 13        Petitioner's brief is far from straightforward; she identifies 6 issues presented for review but divides her argument into 10 headings, many of which raise points unrelated to those 6 issues. In addition, her statement of facts consists almost entirely of legal argument, her argument section contains several subsections with no significant analysis, and her conclusion fails to state the precise relief sought. See Ill. S. Ct. R. 341(h) (eff Oct. 1, 2020) (establishing the requirements for an appellant's opening brief). An appellant's failure to comply with Rule 341(h) is a serious matter for which this court may impose sanctions, including striking portions of the brief or dismissing the appeal. *Ittersagen v. Advocate Health & Hospitals Corp.*, 2021 IL 126507, ¶¶ 36-37; see *Thrall Car Manufacturing Co. v. Lindquist*, 145 Ill. App. 3d 712, 719 (1986) ("A reviewing court is entitled to have the issues on appeal clearly defined with pertinent authority cited and a

- 4 -

cohesive legal argument presented. The appellate court is not a depository in which the appellant may dump the burden of argument and research."). Although we need not go that far in this case, we can say that petitioner's brief has hindered our consideration of this appeal to the extent that such sanctions would not be unduly harsh. See *In re Detention of Powell*, 217 Ill. 2d 123, 132 (2005). Instead, we deem forfeited all of petitioner's arguments not explicitly addressed in this order. See *Ittersagen*, 2021 IL 126507, ¶ 37 (disregarding noncompliant portions of an appellant's brief); *Express Valet, Inc. v. City of Chicago*, 373 Ill. App. 3d 838, 855 (2007) (finding forfeiture of "[a]n issue not clearly defined and sufficiently presented" under Rule 341(h)).

¶ 14                                    A. Legal Standard

¶ 15            It is well established that Johnson, as the state's attorney, is the person ordinarily responsible for investigating any allegations of official misconduct involving County officials and potentially pursuing those allegations on the County's behalf in a civil or criminal proceeding. See *County of Cook ex rel. Rifkin v. Bear Stearns & Co.*, 215 Ill. 2d 466, 482 (2005) ("Under the Counties Code, the State's Attorney has exclusive authority to prosecute all actions on behalf of the County."). The law does not "require the appointment of a special prosecutor in every investigation of official misconduct involving county officials." *In re Grand Jury Investigation of Swan*, 92 Ill. App. 3d 856, 863 (1981). Indeed, the appointment of a special prosecutor is "a drastic measure[,] for it disenfranchises the very electorate who, through its votes, has spoken" by electing its choice to serve as the County's attorney. (Internal quotation marks omitted.) *McCall v. Devine*, 334 Ill. App. 3d 192, 205 (2002). When the trial court declines to appoint a special prosecutor based on the allegations in the petition alone, we review its decision for an abuse of discretion, accepting all well-pleaded facts as true but disregarding all surplusage and conclusory allegations. See *id.* at 198, 205; *In re Appointment of a Special Prosecutor*, 2019 IL App (1st) 173173, ¶ 20

- 5 -

(*Farmer*). To warrant the appointment of a special prosecutor, those facts cannot be "mere suspicion or speculation" but must instead be "specific factual allegations of 'interest' within the meaning of section 3-9008 of the Counties Code." *McCall*, 334 Ill. App. 3d at 205; see *Farmer*, 2019 IL App (1st) 173173, ¶ 49 (describing this as "a very high burden").

¶ 16         Although subsection (a-10) is clear that the petition must establish "that the State's Attorney has an actual conflict of interest in a specific case" (55 ILCS 5/3-9008(a-10) (West 2022)), the parties dispute what it means for the state's attorney to have an actual conflict of interest. In interpreting the currently effective statute, this court has held that an actual conflict of interest exists "where the State's Attorney *** was interested as (1) a private individual or (2) an actual party to the action." *In re Appointment of a Special State's Attorney*, 2020 IL App (2d) 190845, ¶ 17 (*Haney*); see *Farmer*, 2019 IL App (1st) 173173, ¶ 39. This "necessarily includes the circumstance where a state's attorney is obligated to represent both sides of a conflict but refuses to represent one side notwithstanding a colorable claim." *Haney*, 2020 IL App (2d) 190845, ¶ 22 (citing *Suburban Cook County Regional Office of Education v. Cook County Board*, 282 Ill. App. 3d 560, 575 (1996)).

¶ 17         Petitioner argues for an even broader standard, suggesting that anything that would constitute a conflict of interest under the Illinois Rules of Professional Conduct (Rules) necessarily warrants the appointment of a special prosecutor. We may readily reject this argument because it is disclaimed by the Rules themselves. See Ill. R. Prof'l Conduct (2010) Scope cmt. 20 (eff. Jan. 1, 2010) ("[V]iolation of a Rule does not necessarily warrant any other nondisciplinary remedy, such as disqualification of a lawyer in pending litigation."). Indeed, the Rules specifically acknowledge: "[L]awyers under the supervision of [the state's attorney] may be authorized to represent several government agencies in intragovernmental legal controversies in circumstances

where a private lawyer could not represent multiple private clients. These Rules do not abrogate any such authority." Illinois R. Prof'l Conduct (2010) Scope cmt. 18 (eff. Jan. 1, 2010); see Ill. R. Prof'l Conduct (2010) R. 1.13 cmt. 9 (eff. Jan. 1, 2010) ("Defining precisely the identity of the client and prescribing the resulting obligations of such lawyers [for governmental organizations] may be more difficult in the government context and is a matter beyond the scope of these Rules."). The Rules also "do[ ] not impute the conflicts of a lawyer currently serving as an officer or employee of the government to other associated government officers or employees." Ill. R. Prof'l Conduct (2010) R. 1.11 cmt. 2 (eff. Jan. 1, 2010).

¶ 18        Accordingly, we will conduct our inquiry under our existing statutory standard to determine whether petitioner has adequately alleged a conflict of interest. See *Haney*, 2020 IL App (2d) 190845, ¶¶ 17, 22 (agreeing with *Suburban Cook* but rejecting an extrastatutory analysis).

¶ 19                B. The State's Attorney as a Private Individual

¶ 20        Petitioner's arguments revolve almost entirely around Umholtz, but we reject petitioner's view that the question is whether *Umholtz* had a conflict of interest while he was the state's attorney. Instead, the relevant inquiry at the time of the trial court's decision below was whether *Johnson* had an interest that conflicted with his then-current duty as state's attorney to investigate and pursue any colorable claims of misconduct committed by Umholtz and Zimmerman; if so, the court would have the discretion to appoint a special prosecutor to assume *Johnson's duties* under subsection (a-10). Because neither the trial court nor this court can relieve Umholtz of duties he no longer has, petitioner's arguments with respect to Umholtz as a private individual are moot. *Cf. Spomer v. Littleton*, 414 U.S. 514, 520-21 (1974) (vacating a judgment regarding a former Illinois state's attorney's discriminatory practices when "[n]o allegations in the

complaint cited any conduct of [the new state's attorney] as the basis for equitable or any other relief," potentially mooting the complaint and the appeal).

¶ 21     With respect to Johnson, we do not start with the presumption that he will fail to exercise his duties as state's attorney; rather, " '[i]t is presumed that [the state's attorney] will act under such a heavy sense of public duty and obligation for enforcement of all our laws that he will commit no wrongful act.' " *Rifkin*, 215 Ill. 2d at 476 (quoting *People ex rel. Kunstman v. Nagano*, 389 Ill. 231, 252 (1945)). Petitioner has just two concerns with Johnson as a private individual; as the state's attorney's office points out, and petitioner acknowledges, neither of these concerns was raised with the trial court in the petition or supplemental petition, which suggests they are forfeited for purposes of appeal. See *Home Insurance Co. v. Liberty Mutual Insurance Co.*, 266 Ill. App. 3d 1049, 1053 (1994) (finding forfeiture of an issue raised only " 'as an aside' " in a reply brief with the trial court). Assuming that the issue was adequately preserved, however, the allegations are conclusory and would properly have been disregarded by the trial court even if they had been raised in the petition. See *McCall*, 334 Ill. App. 3d at 198, 205.

¶ 22     First, petitioner points out that "Johnson was the Chief Deputy during much of the reign of Umholtz." It is unclear just what conclusion we are supposed to draw from this insinuation, but it fails to rise even to the level of suspicion or speculation, much less the specific factual allegations of interest required. *Id.* at 205. If a county official's former employment by the state's attorney were a sufficient basis for the appointment of a special prosecutor, then a special prosecutor would become necessary to investigate every bare allegation of official misconduct involving those officials, an outcome this court has rejected. *Swan*, 92 Ill. App. 3d at 863; *McCall*, 334 Ill. App. 3d at 205 ("To require [the petitioner] to plead and prove anything less than such

- 8 -

specific facts would open the door to requiring a special prosecutor to be appointed any time a police officer is suspected of wrongdoing.").

¶ 23  Second, petitioner states that Johnson is likely to be a necessary witness in any proceeding that would result from an investigation into Umholtz. See Ill. R. Prof'l Conduct (2010) R. 3.7 (addressing the lawyer as a witness). As noted above, a violation of the Rules would not necessarily provide grounds for disqualifying Johnson, but in any event, petitioner's argument falters on its own terms. Rule 3.7(a) provides that "[a] lawyer shall not *act as advocate at a trial* in which the lawyer is likely to be a necessary witness," subject to three exceptions. (Emphasis added.) Ill. R. Prof'l Conduct (2010) R. 3.7(a) (eff. Jan. 1, 2010). The conflict of interest arises only in the context of a trial because "the function of an advocate is to advance or argue the cause of another, while that of the witness is to state the facts objectively." *People v. Gully*, 243 Ill. App. 3d 853, 859 (1993). As such, any consideration of Rule 3.7—including its exceptions and the possibility of another attorney in the state's attorney's office acting as an advocate at the trial instead—would be premature before the duty to testify materialized. See *People v. Rivera*, 2013 IL 112467, ¶ 38 (holding that a defense attorney's withdrawal was not necessary until "he intended to testify as a material witness"); *Sommer v. Goetze*, 102 Ill. App. 3d 117, 120 (1981) (finding that appointment of special prosecutor was necessary for a hearing at which "the Assistant State's Attorney was the complainant and key eyewitness").

¶ 24  Because petitioner's allegations of an actual conflict interest on Johnson's part were belated, conclusory, and deficient as a matter of law, the trial court did not abuse its discretion in declining to appoint a special prosecutor on this basis.

¶ 25  C. The State's Attorney as an Actual Party

¶ 26 Petitioner argues that an actual conflict of interest exists because the state's attorney's office would be the subject of any investigation into Umholtz. It is not unheard of for a circuit court to appoint a special prosecutor to investigate allegations of misconduct within a state's attorney's office (see *Bianchi v. McQueen*, 818 F.3d 309, 313 (7th Cir. 2016) (describing two such appointments)), but the standard for such an appointment is exceptionally high because it constitutes a judicial intrusion into the political process. See *Farmer*, 2019 IL App (1st) 173173, ¶ 40 (noting the need for "extreme and particularized" facts); see also *People ex rel. Daley v. Moran*, 94 Ill. 2d 41, 46 (1983) (emphasizing the importance of avoiding judicial intrusion into the state's attorney's role as the people's representative). Moreover, the purpose of the appointment is not *prosecution*, as petitioner seems to believe, but the exercise of *prosecutorial discretion* by an impartial decisionmaker after a full and fair investigation into the facts; that decisionmaker may still find that prosecution is not warranted. See Ill. R. Prof'l Conduct (2010) R. 3.8 (eff. Jan. 1, 2016) ("The duty of a public prosecutor is to seek justice, not merely to convict."); *cf. Inmates of Attica Correctional Facility v. Rockefeller*, 477 F.2d 375, 380 (2d Cir. 1973) ("[Judicial] interference with the normal operations of criminal investigations, *** based solely upon allegations of criminal conduct, raises serious questions of potential abuse by persons seeking to have other persons prosecuted.").

¶ 27 Here, petitioner's only real complaint with the state's attorney's office is its failure to act, but the decision whether to act is the state's attorney's prerogative absent truly exceptional circumstances. See *Daley*, 94 Ill. 2d at 46. It is evident after years of litigation that petitioner continues to believe that pursuing Zimmerman's alleged misconduct is of critical importance to the County, but petitioner's views in this respect are no different from any other County resident's views about how the office should spend its time and finite resources. The person in charge of

setting the office's priorities is Johnson, who was elected to represent the citizens of the County; petitioner and Birner must resort to the political process, rather than the courts, to convince the electorate to replace the officeholder or change the officeholder's priorities. See *Rifkin*, 215 Ill. 2d at 481 ("If the voters are unsatisfied with the State's Attorney's manner of discharging his duties, they have a remedy every four years in the election booth.").

¶ 28    Because petitioner's allegations of inaction by the state's attorney's office are not the kind of extreme and particularized allegations of interest necessary to warrant an investigation into the office, the trial court did not abuse its discretion in declining to appoint a special prosecutor on this basis.

¶ 29    D. The State's Attorney's Obligation to Represent Both Sides of a Conflict

¶ 30    In *Haney*, this court recognized that an actual conflict exists under subsection (a-10) when three conditions are met: (1) a state's attorney is obligated to represent both sides of a conflict, (2) one side has a colorable claim against the other, and (3) the state's attorney refuses to represent one side. *Haney*, 2020 IL App (2d) 190845, ¶ 22. Petitioner argues that the trial court erred by failing to consider whether her petition presented a colorable claim. However, we find that the trial court properly declined to reach the question because petitioner failed to adequately allege that the state's attorney was obligated to represent both sides of these claims.

¶ 31    The need for all three conditions identified in *Haney* arises from the fact that the state's attorney's obligation to represent the County is met with a reciprocal obligation by the County to employ the state's attorney as its legal representative. See *Rifkin*, 215 Ill. 2d at 483 ("The State's Attorney *** is the only person empowered to represent the County in matters when, as here, the County is the real party in interest."). Therefore, a refusal by the state's attorney to pursue a legal claim on the County's behalf has the practical effect of extinguishing that claim by leaving

the County without legal representation to pursue it. This extinguishment of the claim may be unfortunate for the County, but it is not necessarily an "actual conflict of interest" warranting the appointment of a special prosecutor under subsection (a-10) (55 ILCS 5/3-9008(a-10) (West 2022)).

¶ 32     However, if the state's attorney is also obligated to represent the opposing party, such as a County officer sued in his official capacity, then the extinguishment of the County's claim confers a benefit on the officer who would otherwise have to defend against the suit; the state's attorney effectively advances one client's interests purely by declining to pursue another client's interests. This situation invokes the court's authority to appoint a special prosecutor under subsection (a-10), with one exception: if the County's claim is not colorable, then there is no "actual conflict of interest" under subsection (a-10) (*id.*) because the County has no legitimate interest in pursuing frivolous claims, and the state's attorney, as well as the special prosecutor, would be ethically prohibited from pursuing such claims in any event. See *Suburban Cook*, 282 Ill. App. 3d at 575 (explaining that the colorable claim requirement ensures that a County official cannot "arbitrarily seek representation from a private attorney, nor seek private representation to advance a frivolous legal position"); Ill. R. Prof'l Conduct (2010) R. 3.1 (eff Jan. 1, 2010) (prohibiting attorneys from advancing frivolous claims).

¶ 33     This does not mean, as petitioner argues, that the colorable claim requirement must always be addressed when this particular kind of conflict is alleged in a petition seeking the appointment of a special prosecutor. On the contrary, subsection (a-10) is agnostic about the *substance* of the "cause, proceeding, or other matter arising under the State's Attorney's duties, civil or criminal" (55 ILCS 5/3-9008(a-10) (West 2022)), so the trial court should consider the potential success of a petitioner's claim only as the final step in determining whether the

appointment of a special prosecutor is necessary. In other words, a court should opine that a claim is meritless only if that lack of merit is the sole basis for the court's refusal to appoint a special prosecutor, and more importantly, a court should never render an improper advisory opinion that a claim is colorable while simultaneously refusing to appoint a special prosecutor to pursue that claim. See *People v. Mosley*, 2015 IL 115872, ¶ 11 (explaining that Illinois courts are not permitted to issue advisory opinions on hypothetical controversies).

¶ 34 Turning to the other two conditions from *Haney*, petitioner has failed to allege the existence of a conflict in which the state's attorney is obligated to represent both sides. Instead, petitioner has described claims the County *could* assert in a hypothetical conflict; however, as we noted in petitioner's previous appeal, the real party in interest to those claims is the County, and the County Board has not chosen to assert those claims. See *Hranka*, 2021 IL App (3d) 200315, ¶¶ 15-16 (citing 55 ILCS 5/1-6003 (West 2016)); *Rifkin*, 215 Ill. 2d at 474 ("Here, only the County would benefit from a successful prosecution of the *** claims. Therefore, the County is the only real party in interest."). Until the County Board does so, the state's attorney has no obligation to pursue the claims on the County's behalf, merely the discretion to act, and for the reasons set forth above, "[t]here is no reason to assume that the State's Attorney's decision *** is ill-considered, unfounded, or improperly motivated" (*Rifkin*, 215 Ill. 2d at 481) in the absence of specific factual allegations of interest, which petitioner has failed to supply.

¶ 35 Nevertheless, petitioner seems to argue that the merely hypothetical obligations raised by the petition are sufficient under *Haney* because, even if the County chose to pursue the claims, the state's attorney has *preemptively* refused to represent the County on those claims by participating in this very litigation. According to petitioner, the state's attorney's repeated arguments that her claims lack merit have so impaired his ability to represent the County that "it

staggers the imagination that he could switch his allegiance \*\*\* and commence representing the county relative to the same claims." We reject this argument for two reasons.

¶ 36 First, petitioner is merely speculating about events that have not transpired. We will not prematurely presume that the state's attorney would abandon his " 'heavy sense of public duty' " to zealously advocate on the County's behalf if the County chose to assert these claims itself. See *id.* at 476. Similarly, we will not presume that the state's attorney would fail to take some corrective action if he did find that he could not represent the County with anything less than the zealous advocacy it is his duty to provide. See *id.*

¶ 37 Second, and more critically, petitioner's proposed approach would eviscerate the ability of state's attorneys to oppose the appointment of special prosecutors. Petitions under subsection (a-10) will generally be opposed because a state's attorney who supports the appointment of a special prosecutor has the right to recuse himself under subsection (a-15) rather than rely on a third party to file a petition under subsection (a-10). See 55 ILCS 5/3-9008(a-15) (West 2022) ("Notwithstanding subsections (a-5) and (a-10) of this Section, the State's Attorney may file a petition to recuse the State's Attorney from a cause or proceeding for any other reason the State's Attorney deems appropriate and the court shall appoint a special prosecutor as provided in this Section."). For a state's attorney to properly defend his constitutional role from unnecessary intrusion by a special prosecutor, he must be allowed to argue to the best of his ability that the claims in the petition are not colorable, and the less colorable the claims are, the better the state's attorney's arguments against them will be. As such, petitioner's proposed approach would produce the perverse consequence of making the appointment of a special prosecutor *more* likely in cases where the underlying claims are *less* likely to succeed on the merits, based on the opinion of the constitutional officer best equipped to make such judgments. We decline to endorse an approach

that would incentivize state's attorneys to make halfhearted arguments against the appointment of special prosecutors to avoid conveying the impression that they have improperly prejudged claims.

¶ 38       Although we do not rule out the possibility that a state's attorney's litigation strategy in response to a petition may weigh in favor of the appointment of a special prosecutor, we cannot find that vigorous opposition to the petition in and of itself constitutes a preemptive refusal to pursue a claim raised in the petition if an obligation to pursue that claim materialized.

¶ 39       Because petitioner failed to adequately allege two of the three required components to establish an actual conflict of interest under *Haney*, the trial court did not abuse its discretion by declining to consider the third requirement or appoint a special prosecutor on this basis.

¶ 40                                E. Finding of No Ethical Violation

¶ 41       In its order denying petitioner's motion to reconsider, the trial court found, "Respondent has not violated the Illinois Rules of Professional Conduct." Although we understand the court to have engaged in roughly the same legal analysis of the Rules that we conducted above, and while consideration of the rules of professional ethics may be part of the relevant analysis, we do not believe the trial court's finding should be construed as an attempt to decide any ethical issue *per se*. A trial court may not adjudicate whether an attorney *in fact* violated the Rules in the course of its analysis because that "would constitute an impermissible infringement on the exclusive power of the supreme court, acting through the [Attorney Registration and Disciplinary Commission], to adjudicate disciplinary matters." *Lustig v. Horn*, 315 Ill. App. 3d 319, 328 (2000). For the same reason, this court may not enter a judgment affirming a trial court's finding that an attorney has or has not violated the Rules. See *Skolnick v. Altheimer & Gray*, 191 Ill. 2d 214, 229 (2000) ("In Illinois, only [the supreme] court possesses the 'inherent power to discipline attorneys who have been admitted to practice before it.' ") (quoting *In re Harris*, 93 Ill. 2d 285, 291 (1982)).

We pause here only to note that the trial court's "finding" should not be construed as encroaching on the supreme court's authority in deciding matters of attorney discipline.

¶ 42                                          III. CONCLUSION

¶ 43            For the reasons stated, we affirm the trial court's judgment.

¶ 44            Affirmed.